1

2

3                                                      O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  ROSALBA SANDOVAL,          )   Case No. EDCV 08-00482-VAP
    individually, and on       )   (OPx)
12  behalf of all other        )
    similarly situated         )   **[Motion filed on July 28,**
13  current and former         )   **2009]**
    employees of Courtyard     )
14  Marriott and Tharaldson    )   **ORDER GRANTING PLAINTIFF'S**
    Employee Management,       )   **MOTION FOR ORDER: (1)**
15  Inc.,                      )   **CONDITIONALLY CERTIFYING**
                               )   **SETTLEMENT CLASS; (2)**
16              Plaintiff,     )   **GRANTING PRELIMINARY**
                               )   **APPROVAL TO PROPOSED CLASS**
17       v.                    )   **ACTION SETTLEMENT AND PLAN**
                               )   **OF ALLOCATION; (3) DIRECTING**
18  THARALDSON EMPLOYEE        )   **DISSEMINATION OF CLASS**
    MANAGEMENT, and DOES 1     )   **NOTICE AND CLAIM FORM TO**
19  through 100, inclusive,    )   **CLASS; AND (4) SETTING FINAL**
                               )   **APPROVAL HEARING DATE AND**
20              Defendants.    )   **RELATED DATES**
    _____)
21                                 **[Link & Term Doc. Nos. 32 & 39]**

22

23                      **I. BACKGROUND**

24       On October 30, 2007 in the California Superior Court

25  for the County of San Bernardino, Plaintiff Rosalba

26  Sandoval ("Plaintiff") filed a putative class action

27  Complaint against Defendants Courtyard Marriott

28  ("Marriott") and Theraldson Employee Management Inc.

("Tharaldson" or "Defendant") with the following claims:
(1) Failure to Pay Overtime Compensation, Labor Code §
1194; (2) Unlawful Collection of Receipt of Wages
Previously Paid and Failure to Indemnify for Expenditures
in Discharge of Duties, Labor Code §§ 221, 2802; (3)
Failure to Provide Required Meal Periods, Labor Code §
226.7; (4) Failure to Provide Required Rest Periods,
Labor Code § 226.7; (5) Failure to Provide Accurate
Statements and Maintain Required Records, Labor Code §§
226, 1174; and (6) Unlawful Business Practices, Business
and Professions Code § 17200.  On April 9, 2008,
Defendant Tharaldson Employee Management Inc. removed the
case to this Court pursuant to the Class Action Fairness
Act, 28 U.S.C. § 1332(d).  On July 8, 2008, pursuant to
Federal Rule of Civil Procedure 41, Plaintiff dismissed
Defendant Courtyard Marriott from the action.

On March 4, 2009, Plaintiff filed a "Notice of
Settlement" as to all claims against Defendant
Tharaldson.  On July 28, 2009, Plaintiff filed a "Motion
for Order: (1) Conditionally Certifying Settlement Class;
(2) Granting Preliminary Approval to Proposed Class
Action Settlement and Plan of Allocation; (3) Directing
Dissemination of Class Notice and Claim Form to Class;
and (4) Setting Final Approval Hearing Date and Related
Dates" ("Motion"), the Declaration of Matthew J. Matern
("Matern Declaration"), a Stipulation of Class Action

1  Settlement ("Stipulation"), and proposed Claim and Notice
2  Forms.  On August 7, 2009, Defendant Tharaldson filed a
3  "Notice of Non-Opposition" to Plaintiff's Motion.  During
4  a hearing on August 24, 3009, the Court requested the
5  parties file additional declarations.  On September 3,
6  2009, Plaintiff filed the Declaration of Rosalva Sandoval
7  ("Sandoval Decl.") and the Supplemental Declaration of
8  Matthew J. Matern ("Matern Supplemental Decl.") in
9  support of the Motion.

10

11                    **II. LEGAL STANDARD**

12  **A.    Class Certification**

13      Parties seeking class certification for settlement
14  purposes must satisfy the requirements of Federal Rule of
15  Civil Procedure 23 ("Rule 23").  <u>Amchem Prods., Inc. v.</u>
16  <u>Windsor</u>, 521 U.S. 591, 620 (1997).  A court considering
17  such a request should give the Rule 23 certification
18  factors "undiluted, even heightened, attention in the
19  settlement context."  <u>Id.</u>

20

21      To bring a class action under Rule 23(a), a plaintiff
22  must demonstrate:
23          the class is so numerous that joinder of all
24          members is impracticable ["numerosity"], (2) there
25          are questions of law or fact common to the class
26          ["commonality"], (3) the claims or defenses of the
27          representative parties are typical of the claims
28

or defenses of the class ["typicality"], and (4) the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"].

In addition to these prerequisites, a plaintiff must satisfy one of the Rule 23(b) prongs to maintain a class action.  Where, as here, a plaintiff moves for class certification under Rule 23(b)(3), the plaintiff must prove:

the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[1]

_____

[1] A fourth factor, "the difficulties likely to be encountered in the management of a class action," need not be considered when class certification is only for

(continued...)

**B.   Preliminary Approval of Settlement**

Rule 23(e) states: "The court must approve any
settlement, voluntary dismissal or compromise of the
claims, issues, or defenses of a certified class."  Fed.
R. Civ. P. 23(e)(1)(A).  The court must hold a hearing
and find that "the settlement . . . is fair, reasonable,
and adequate."  Fed. R. Civ. P. 23(e)(1)(C).  Review of a
proposed settlement generally proceeds in two stages, a
hearing on preliminary approval followed by a final
fairness hearing.  See Federal Judicial Center, Manual
for Complex Litigation, § 21.632 (4th ed. 2004).

At the preliminary approval stage, a court determines
whether a proposed settlement is "within the range of
possible approval" and whether or not notice should be
sent to class members.  In re Corrugated Container
Antitrust Litig., 643 F.2d 195, 205 (5th Cir. 1981); see
also the purpose of a preliminary approval hearing is "to
ascertain whether there is any reason to notify the class
members of the proposed settlement and to proceed with a
fairness hearing"); Manual for Complex Litigation §
21.632.

_____

(...continued)
settlement purposes.  Fed. R. Civ. P. 23(b)(3)(D); Amchem
Prods., 521 U.S. at 620.

5

1          **III. DISCUSSION**

2    **A.   Certification of Settlement Class**

3          In this Motion, Plaintiff seeks certification of the

4    settlement class, described as: "all persons who were

5    employed in any non-exempt position at any Courtyard by

6    Marriott property ("Property") which was or is managed by

7    Tharaldson in the State of California between October 30,

8    2003 and the Date of Preliminary Approval." (Settlement

9    Stip. § 1.5.)

10

11         **1.   Numerosity**

12         To establish, under Rule 23(a)(1), that joinder of

13   all members is "impracticable," the plaintiff need not

14   show that it would be "impossible" to join every class

15   member.  <u>Haley v. Medtronic, Inc.</u>, 169 F.R.D. 643, 647

16   (C.D. Cal. 1996).  There is no specific number

17   requirement, as the court may examine the specific facts

18   of each case.  <u>Ballard v. Equifax Check Servs., Inc.</u>, 186

19   F.R.D. 589, 594 (E.D. Cal. 1999).  Indeed, courts have

20   not required evidence of specific class size or identity

21   of class members to satisfy the requirements of Rule

22   23(a)(4).  <u>Robidoux v. Celani</u>, 987 F.2d 931, 935 (2d Cir.

23   1993).

24

25         Here, Plaintiff's counsel avers the settlement class

26   consists of over one thousand current and former

27   employees of Defendant.  (<u>See</u> Matern Decl. ¶ 24; Mot. at

28

                                    6

9.)  This satisfies "numerosity" for purposes of Rule 23.
See <u>Ballard</u>, 186 F.R.D. at 594.

### 2.  Commonality

Courts have construed Rule 23(a)(2)'s commonality
requirement permissively.  <u>Hanlon v. Chrysler Corp.</u>, 150
F.3d 1011, 1019 (9th Cir. 1998).  As the Ninth Circuit
explained:

> All questions of fact and law need not be common
> to satisfy the rule. The existence of shared legal
> issues with divergent factual predicates is
> sufficient, as is a common core of salient facts
> coupled with disparate legal remedies within the
> class.

<u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir.
1998).

Additionally, this Court, Pfaelzer, J., has stated
"the commonality requirement is interpreted to require
very little."  <u>In re Paxil Litigation</u>, 212 F.R.D. 539,
549 (C.D. Cal. 2003).  "[F]or the commonality requirement
to be met, there must only be one single issue common to
the proposed class."  <u>Haley</u>, 169 F.R.D. at 648.

Here, Plaintiff lists nine "common questions."  (Mot.
at 10-11.)  Plaintiff's Declaration and Matern's
Supplemental Declaration substantiate Plaintiff's

allegations.  Matern's Supplemental Declaration discusses
time record sampling analysis and other evidence
indicating that "Defendant routinely required employees
to work through meal and rest periods."  (Matern
Supplemental Decl. ¶¶ 8-9.)  Plaintiff's Declaration
states that she personally observed other employees who
did not receive meal or rest breaks.  (Sandoval Decl. ¶
8.)  This establishes an issue common to the proposed
class.  See Haley, 169 F.R.D. at 648.  Accordingly,
Plaintiff has met her burden of establishing
"commonality" as required by Rule 23.

###    3.  Typicality

     The Ninth Circuit in Hanlon explained that
"representative claims are 'typical' if they are
reasonably co-extensive with those of absent class
members; they need not be substantially identical."  150
F.3d at 1020.  Thus, to find typicality, a "court does
not need to find that the claims of the purported class
representative are identical to the claims of the other
class members."  Haley, 169 F.R.D. at 649.  The class
representatives "must be able to pursue [their] claims
under the same legal or remedial theories as the
unrepresented class members."  Paxil, 21 F.R.D. at 549.

1    Plaintiff provides evidence that her claims are
2    typical of Class Members.  Plaintiff's counsel analyzed a
3    one-month-per-quarter sampling of Defendant's employee
4    punch cards.  (Matern Supplemental Decl. ¶ 10.)  The
5    average violation rate for the analyzed sample was 56.52
6    percent for Class Members for missed, short, or late meal
7    breaks.  (Id.)  An analysis of Plaintiff's time cards
8    during the entire period reflects a violation rate of
9    59.66 percent, which is similar to the Class Member
10   violation rate.  (Id.)  This analysis indicates the
11   claims for Plaintiff and the unrepresented Class Members
12   arise from a similar factual basis, and according give
13   rise to the same legal and remedial theories.  See Paxil,
14   21 F.R.D. at 549.  Accordingly, Plaintiff has established
15   "typicality" under Rule 23.
16
17       **4.  Adequacy of Representation**
18       Traditionally, courts have engaged in a two-part
19   analysis to determine if the plaintiff has met the
20   requirements of Rule 23(a)(4): (1) the class
21   representative must not have interests antagonistic to
22   the unnamed class members, and (2) the representative
23   must be able to prosecute the action "vigorously through
24   qualified counsel."  Lerwill v. Inflight Motion Pictures,
25   Inc., 582 F.2d 507, 512 (9th Cir. 1978).
26
27
28

As explained above, class representative Sandoval shares the interests of the class members in obtaining compensation allegedly owed for missed meal breaks. Moreover, Sandoval personally participated in this lawsuit and has participated in all necessary proceedings.  Accordingly, Sandoval is an adequate representative of the class.

Adequate representation also "'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'"  Paxil, 212 F.R.D. at 550. Courts determine the adequacy of counsel under Rule 23(g).  See Fed. R. Civ. P. 23(g) (the court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."); see, e.g., Hill v. Merrill Gardens, L.L.C., No. 1:04CV-248, 1:05-CV-4, 2005 WL 2465250, at *3 (N.D. Ind. Oct. 6, 2005); Fed. R. Civ. P. 23 Advisory Committee Notes.

1    Here, Plaintiff's counsel investigated potential
2    claims of the class by : (1) deposing Plaintiff; (2)
3    deposing Todd Troyer, Defendant's then Director of Human
4    Resources; (3) reviewing documents produced by Defendant;
5    (4) reviewing and analyzing Defendant's representative
6    sample timekeeping and payroll data; and (5) consulting
7    with experts regarding Defendant's data.  (See Matern
8    Decl. ¶¶ 16-21.)  Furthermore, Plaintiff provides
9    evidence sufficient to demonstrate the qualifications of
10   purported class counsel.  (See Matern Decl. ¶¶ 4-15, 32
11   (discussing the resources and collective experience of
12   purported class's law firm and the individual education
13   and experience of purported class counsel).)  Plaintiff,
14   therefore, has established her counsel's "ability to
15   fairly and adequately represent the interests of the
16   class."  Fed. R. Civ. P. 23(g)(1)(B).

17

18   Plaintiff also establishes an absence of collusion.
19   The collusion inquiry "addresses the possibility the
20   agreement is the result of either overt misconduct by the
21   negotiators or improper incentives for certain class
22   members at the expense of other members of the class."
23   In re M.L. Stern Overtime Litigation, No. 07-CV-0118-BTM,
24   2009 W.L. 995864, at *5 (S.D. Cal. Apr. 13, 2009), citing
25   Staton v. Boeing Co., 327 F.3d 938, 960 (9th Cir. 2003).
26   Here, the settlement was reached with the supervision and
27   assistance of an experienced independent mediator,

28

Christine Masters.  (Mot. at 4.)  Thus, there is no
appearance of collusion. (<u>See</u> Matern Supplemental Decl.
¶¶ 2, 7-10.)

Accordingly, Plaintiff establishes "adequacy of
representation" under Rule 23.

### 5.   Predominance of Common Questions of Law or Fact and Superiority of a Class Action

Plaintiff's Complaint alleges that a class action is
superior to other available means for adjudicating Class
Members' claims.  As noted above, Plaintiff's counsel
analyzed a sampling of Class Members' time cards and
compared the violation rate to Plaintiff's violation
rate.  (Matern Supplemental Decl. ¶ 10.)  This analysis
illustrates that resolution of the Class Members' claims
and Plaintiff's claim involve common issues -- namely,
whether Defendant failed to permit employees to take meal
and rest breaks and to compensate employees for all hours
worked.  This question of fact predominates over
individual questions and is common to all class members.
Accordingly, Plaintiff meets her burden of showing
"predominance of common questions of fact or law" and the
"superiority of a class action" under Rule 23.

Based on the foregoing, the Court GRANTS Plaintiff's
Motion as to conditional class certification.

**B.    Fairness and Adequacy of Settlement Agreement**

The Court now turns to Rule 23(e) factors to determine whether the Settlement Agreement is adequate and reasonable.  In determining whether a settlement is fair, reasonable, and adequate, courts balance several factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[2] and the reaction of the class members to the proposed settlement.

Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291 (9th Cir. 1992), citing Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982).

Here, the proposed settlement calls for a total maximum settlement consideration of $750,000 (Settlement Stip. § 1.19), from which the parties propose to deduct the following: (1) 30% of the maximum settlement consideration for attorneys' fees and actual litigation expenses, which collectively will not exceed 35%, or $262,500 (Settlement Stip. § 7.1); (2) $15,000 for the class representative; and (3) claims administrations costs not to exceed $35,000 (Settlement Stip. § 8.1).  By the Court's own calculation, after these deductions, the

---

[2] This factor does not apply to this case.  Thus, the Court does not address it.

13

estimated remaining settlement amount ("Net Settlement Amount") will be approximately $437,500.

The Settlement Agreement proposes to divide the Net Settlement Amount among all Class Members in proportion to the gross wages earned by the Class Member during the specified period. (Settlement Stip. § 6.2.1.) The Class Members will receive a share of the Net Settlement Amount equal to his or her gross pay divided by the aggregate gross pay for all Class Members, multiplied by the Net Settlement Amount. (Id.) Within 21 days of the date of preliminary approval by the Court, Defendant will provide to the Claims Administrator, a database containing the name, last known address, and Social Security number of each Class Member. (Settlement Stip. § 9.1.) Defendant will also provide personnel and payroll records for determining Class Members' gross compensation during the class period. (Settlement Stip. § 9.3.3.) These records will be presumed determinative with respect to whether each employee is a Class Member and the data regarding gross pay. (Id.)

### 1.   Arms-length negotiations

The parties engaged in negotiations, including a 12-hour mediation session presided over by an experienced mediator, Christine Masters, after which the parties reached an agreement. (Mot. at 4-5; Matern Decl. ¶¶ 22-

23; Matern Supplemental Decl. ¶ 4.)  The Court is
satisfied the Settlement Agreement is the product of
arms-length negotiation.  (<u>Id.</u>)

**2.  Strength of Plaintiff's Case and the Risk,
      Expense, Complexity, and Likely Duration of
      Further Litigation**

Plaintiff states the primary strength of the case is
the time record sampling showing a violation rate of
56.52 percent for the Class Members. (Matern Decl. ¶
10.)  Plaintiff argues that the Settlement Agreement
provides Class Members with "the benefit of removing the
risks, delay and uncertainties of litigation."  (Matern
Decl. ¶ 26.)

Plaintiff, although confident in her position, notes
several risks and weaknesses in her case.  Plaintiff
contends that Defendants have contested liability and
class certification vigorously in this case.  (Matern
Supplemental Decl. ¶ 4; Settlement Stip. ¶¶ 3.3-3.4.)
Moreover, Plaintiff argues that proof of rest period and
meal break violations is particularly difficult because
it requires production of significant facts.  (Matern
Supplemental Decl. ¶¶ 25-26.)  Plaintiff also points to
risks inherent in litigation, acknowledging the
challenges of obtaining class certification and of
proving liability and damages, as well as the possibility

1   that Defendant will raise meritorious defenses to

2   Plaintiff's claims. (Stipulation ¶ 3.4.) Settling the

3   case, Plaintiff reasons, would "avoid many more documents

4   being requested, reviewed and analyzed with more expense

5   in having [Plaintiff's] expert analyze the documents[,] .

6   . . obtain[ing] the contact information of the absent

7   class members, contact[ing] them and obtain[ing] numerous

8   declarations[,] . . . [and] send[ing] out questionnaires

9   to absent members at great expense." (Matern

10  Supplemental Decl. ¶ 11.) For the foregoing reasons, the

11  Court finds this factor weighs in favor of preliminary

12  approval.

13

14      **3.   The Amount Offered in Settlement**

15      The amount offered in settlement is $750,000. (Mot.

16  at 1, 5-8; Stipulation § 1.19.) In exchange for the

17  settlement, Plaintiff and the putative class agree to

18  release all of their claims against Defendant.

19  (Stipulation §§ 1.27, 1.28.) The amount offered in

20  settlement supports preliminary approval. Considering

21  the present value of the settlement amount, the

22  probability of lengthy litigation in the absence of a

23  settlement, the risk that Plaintiff and the Class Members

24  would not have been able to succeed at trial, and the

25  risk that a jury could award damages less than $750,000,

26  the settlement amount is within the range of

27

28

reasonableness.   Accordingly, the Court finds this factor
weighs in favor of preliminary approval.

>    **4.    The Extent of Discovery Completed, and the Stage
>         of the Proceedings**

This factor requires the Court to evaluate whether
"the parties have sufficient information to make an
informed decision about settlement." Linney v. Cellular
Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998).
Here, Plaintiff demonstrates that class counsel conducted
the following discovery: (1) deposing Plaintiff; (2)
deposing Todd Troyer, Defendant's then Director of Human
Resources; (3) reviewing documents produced by Defendant;
(4) reviewing and analyzing Defendant's representative
sample timekeeping and payroll data; and (5) consulting
with experts regarding Defendant's data.   (See Matern
Decl. ¶¶ 16-21.)  Accordingly, the Court finds that the
parties possessed sufficient information to make an
informed decision about the settlement.

No trial date has yet been set in this case, and it
appears the action has reached a settlement at an early
phase of the litigation.   In other words, this is not a
case where dozens of depositions have been taken and
thousands of pages of documents reviewed before the
parties reached a settlement.   The parties have not

litigated the issue of class certification, nor have they
filed any Motions with the Court, save the present one.

Thus, this factor weighs in favor of finding the
Settlement Agreement reasonable.  Plaintiff has
demonstrated that the parties have spent sufficient time
on the action to allow an informed decision about
settlement, but not so much time as to deplete the common
fund.  Accordingly, this factor supports preliminarily
approving the settlement.

### 5.  Experience and Views of Counsel

Plaintiff submits a detailed declaration by her
counsel demonstrating his extensive experience litigating
wage and hour class actions.  (See Matern Decl. ¶¶ 4-15,
32.)  In the declaration, Plaintiff's counsel states his
opinion that the Settlement is reasonable and fair.  (Id.
at ¶ 32.)  This factor weighs in favor of the
reasonableness of the Settlement Agreement.

### 6.  Reaction of Class Members to the Proposed Settlement

Plaintiff provides no evidence regarding Class
Members' reactions to the proposed settlement.  Plaintiff
submits a supplemental declaration from her counsel
stating that counsel has not received Class Members'
contact information and thus cannot determine Class

Members' reactions to the Settlement at this time. (<u>See</u>
Matern Supplemental Decl. ¶ 12.)   While the Motion does
not mention this factor, the situation described by
Plaintiff is not unusual.   Thus, this factor neither
weighs in favor of nor against reasonableness.

### 7.   Attorneys' Fees and Incentive Payment for Named Plaintiff

The Motion and Stipulation indicate Plaintiff will
seek allocation of settlement funds for attorneys' fees
and for an incentive payment.   For a settlement to be
fair and adequate, "a district court must carefully
assess the reasonableness of a fee amount spelled out in
a class action settlement agreement."   <u>Staton</u>, 327 F.3d
at 963.

#### a)   Attorneys' Fees

At this preliminary stage, the plan for distributing
the settlement appears sufficiently fair for conditional
approval.   The attorneys' fees distribution, however,
does not pass muster yet.   This will not prevent the
Court from preliminarily approving the settlement, but
Plaintiff must make a further showing for final approval.

Plaintiff asserted a claim under California law, and
California law governs the award of attorneys' fees.
<u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th

1  Cir. 2002).  California recognizes the common fund
2  doctrine for the award of attorneys' fees to prevailing
3  plaintiffs whose efforts result in creation of a fund
4  benefitting others.  <u>Serrano v. Priest</u>, 20 Cal. 3d 25, 35
5  (1977).  Under both California and Ninth Circuit
6  precedent, a court may exercise discretion to award
7  attorneys' fees from a common fund by applying either the
8  lodestar method[3] or the percentage-of-the-fund method.[4]
9  <u>Wershba v. Apple Computer, Inc.</u>, 91 Cal. App. 4th 224,
10  253 (2001); <u>Fischel v. Equitable Life Assurance Soc'y of</u>
11  <u>U.S.</u>, 307 F.3d 997, 1006 (9th Cir. 2002), citing
12  <u>Vizcaino</u>, 290 F.3d at 1047.  "Irrespective of the chosen
13  method, 'the district court should be guided by the
14  fundamental principle that fee awards out of common funds
15  be 'reasonable under the circumstances.'"  <u>Alberto v.</u>
16  <u>GMRI. Inc.</u>, 252 F.R.D. 652, 667 (E.D. Cal. 2008), citing
17  <u>In re Wash. Pub. Power Supply Sys. Sec. Litig.</u>, 19 F.3d
18  1291, 1295 (9th Cir. 1990).
19
20     Plaintiff seeks to employ the latter procedure,
21  whereby Plaintiff's counsel would recover 30% of the up
22  to $750,000 settlement fund ($225,000) for attorneys'
23  _____
24  [3] Under the lodestar method, the court calculates the
   fee award by multiplying the number of hours reasonably
25  spent by a reasonable hour rate and then enhancing that
   figure, if necessary to account for the risks associated
26  with representation.  <u>Paul, John, Alston & Hunt v.</u>
   <u>Graulty</u>, 886 F.2d 268, 272 (9th Cir. 1989).
27  [4] Under the percentage-of-the-fund method, the court
   calculates the fee award by designating a percentage of
28  the total common fund.  <u>Six Mexican Workers v. Ariz.</u>
   <u>Citrus Growers</u>, 904 F.2d 1301, 1311 (9th Cir. 1990).

fees, plus costs, the total of which will not exceed 35%
of the total settlement fund, or $262,500, for attorneys'
fees and costs.  (Stipulation § 7.1.)  Plaintiff argues
this amount is reasonable because it is "consistent with
the Ninth Circuit's standard."  (Mot. at 8.)

The Court, however, disagrees with Plaintiff's
assertion that 30% is reasonable.  The Ninth Circuit's
benchmark is 25%, not 30%.  See Hanlon, 150 F.3d at 1029
("This circuit has established 25% of the common fund as
a benchmark award for attorney fees."); Paul, Johnson,
Alston & Hunt v. Graulty, 866 F.2d 268, 272 (9th Cir.
1989) (the 25% benchmark can be adjusted upward or
downward "to account for any unusual circumstances[,]"
but the justification for adjustment must be clear).
Plaintiff has not presented unusual circumstances that
justify a departure from the Ninth Circuit benchmark.
Thus, the attorneys' fees request appears unreasonable.

As the other terms of the proposed settlement appears
reasonable, however, the attorneys' fees will not prevent
preliminary approval.  See Acosta v. Trans Union, 243
F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether
preliminary approval is appropriate, the settlement need
only be potentially fair, as the Court will make a final
determination of its adequacy at the hearing on Final
Approval, after such time as any party has had a chance

1  to object and/or opt out.").  If Plaintiff's counsel

2  seeks more than 25%, counsel must advise what unusual

3  circumstance justify adjusting the benchmark upward in

4  this case, as there is currently no such justification on

5  the record.

6

7           **b)   Incentive Payment for Plaintiff**

8       The Motion indicates Plaintiff will seek up to

9  $15,000 as an incentive award, in addition to any

10 recovery to which she may be entitled under the

11 Settlement Agreement.  (<u>See</u> Mot. at 7-8; Stipulation §

12 6.3.)  The criteria courts may consider in determining

13 whether to make an incentive award include:

14          1)  the  risk  to  the  class  representative  in
            commencing suit, both financial and otherwise; 2)
15          the    notoriety    and    personal    difficulties
            encountered  by  the  class  representative; 3) the
16          amount  of  time  and  effort  spent  by  the  class
            representative; 4) the duration of the litigation
17          and; 5) the personal benefit (or lack thereof)
            enjoyed by the class representative as a result of
18          the litigation.
   <u>Van Vranken v. Atlantic Richfield Co.</u>, 901 F. Supp. 294,
19
   299 (N.D. Cal. 1995).
20

21
        Plaintiff bases her proposed incentive award on the
22
   following: (1) the amount of time and effort she expended
23
   during the course of the litigation, including being
24
   deposed, reviewing documents, and having regular
25
   discussions with counsel; (2) the risks she incurred
26
   during the course of litigation (<u>e.g.</u>, being liable for
27
   opposing parties' fees and costs); (3) providing a full
28

general release that is "much broader" than the general
"Released Claims" in the Settlement; (4) risking
potential stigma of being a Class Representative in a
class action labor dispute, which could affect her future
employability; and (5) the value of the individual claim
she is settling, which her counsel values at more than
$15,000.  (See Mot. at 7-8; Settlement Stip. § 3.5;
Matern Supplemental Decl. ¶ 13.)

    Plaintiff submits declarations detailing the amount
of time she has spent on this case, including: (1)
attending mediation (16 total hours, including 12 hours
at the mediation and 4 hours traveling to the mediation);
participating in her deposition (15.5 hours total,
including 5 hours preparing for the deposition, 6.5 hours
at the deposition, and 4 hours traveling to the
deposition); (3) meeting with counsel's investigators (2
hours); and (4) regularly communicating with counsel.
(Sandoval Decl. ¶¶ 3-4, 12; Matern Decl. ¶¶ 5-6.)  The
total number of hours Plaintiff accounts for is 33.5
hours.  Plaintiff also alleges she bore individual risks
in her capacity as class representative, including: (1)
subjecting herself to liability for Defendant's costs and
attorney's fees (Matern Decl. ¶ 4), and (2) "by filing
this lawsuit against [Defendant] . . . [Plaintiff] may
need to disclose this fact to potential future employers
and it will be a public record[, which] may adversely

1   effect (sic) [Plaintiff's] ability to be hired."

2   (Sandoval Decl. ¶ 11.)

3

4       An award of $15,000 is unreasonable, considering the

5   limited time Plaintiff expended and the awards other

6   Class Members will receive.  The Court determines that

7   $7,500 is an appropriate incentive award for Plaintiff.

8   See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d

9   454, 463 (9th Cir. 2000) (approving incentive award of

10  $5,000 to two plaintiff representatives of 5,400

11  potential class members in $1.75 million settlement, but

12  constituting only 0.56% of the settlement); In re

13  SmithKline Beckman Corp., 751 F. Supp. 525, 535 (E.D. Pa.

14  1990) (approving incentive payments of $5,000 for one

15  named representative of each of nine plaintiff classes

16  involving more than 22,000 claimants and a settlement of

17  $22 million, constituting 0.18% of the settlement

18  amount); Alberto v. GMRI, Inc.,252 F.R.D. 652 667-670

19  (E.D. Cal. 2008) (requiring parties to present evidence

20  showing the named plaintiff's substantial efforts taken

21  as class representative to justify the discrepancy

22  between her $5,000 award, constituting 0.71% of the

23  settlement, and the $24.17 that each class member was

24  expected to receive).

25

26

27

28

1   Here, Plaintiff has not stated how much the parties
2   anticipate class members will receive.  However, an award
3   of $7,500 would constitute 1.00% of the gross settlement,
4   or 1.83% of the net settlement.  This payment represents
5   a higher percentage than the cited cases, and Plaintiff
6   has not argued persuasively that an even higher incentive
7   award is justified.  Thus, a payment of $15,000 is
8   excessive under the circumstances of this case, and the
9   Court determines an incentive award of $7,500 is fair and
10  reasonable.

11

12  **8.   Release of Claims**

13  The factors above favor approval of the settlement.
14  The Stipulation proposes to release Defendants from:

15          any and all known and unknown claims, causes of
16          action, debts, liabilities, demands, obligations,
            guarantees or damages, in law or equity, tort or
16          in contract, by statute, pursuant to case law or
17          otherwise which have been or could have been
            alleged in the Lawsuit or in any other state or
18          federal court, administrative tribunal, or in
            arbitration or similar proceedings, based upon,
19          arising from, or related to the claims or causes
            of action asserted in the Lawsuit including but
20          not limited to violations of California Labor Code
            Sections 203, 204.3, 221, 226.7, 512, 1174, 1198,
21          and 2802 and applicable Industrial Welfare
            Commission Wage Orders, based upon Theraldson's
22          alleged: Nonpayment of compensation for meal and
            rest period violations; nonpayment of wages,
23          including claims for overtime wages and "off-the-
            clock" work; failure to indemnify employees for
24          expenditures incurred in the discharge of their
            duties; failure to pay all wages due at
25          termination; inaccurate wage statements; unfair or
            unlawful business practices (including under
26          Business & Professions Code Sections 17200 et
            seq.); and any related premiums, penalties,
27          interest, punitive damages, costs, attorneys'

28

1    fees, injunctive relief, declaratory relief, or
     accounting.
2  (Settlement Stip. § 127) (emphasis added).)

3  The settlement compensates Class Members for Defendants'

4  alleged failure "to provide lawful duty free rest periods

5  and meal periods, or pay compensation in lieu thereof;

6  failing to indemnify employees for expenses incurred in

7  the discharge of their duties; failing to pay wages

8  (including overtime and for off-the-clock work); failing

9  to pay all wages due at termination; and failing to

10  comply with itemized employee wage statement provisions.

11  [Plaintiff] further alleges that [Defendants's] conduct

12  violated California's Unfair Competition Law set forth in

13  California Business & Professions Code Section 1700, et

14  seq." (Proposed Settlement at 2.)

15

16     The settlement, therefore, is fair and reasonable

17  because it includes only those claims "based upon,

18  arising from, or related to the claims or causes of

19  action asserted in the Lawsuit."  In other words, it does

20  not prevent Class Members from pursuing claims unrelated

21  to the settlement.

22

23     Based on the balance of the foregoing factors, the

24  Court finds Plaintiff has met her burden of demonstrating

25  the fairness, reasonableness, and adequacy of the

26  Settlement Agreement.  However, Plaintiff must amend the

27

28

attorneys' fees and class representative incentive award
before final approval.

## C.   Notice Procedure

Under Rule 23(e), the Court must "direct notice in a
reasonable manner to all class members who would be
bound" by the proposed settlement.  Fed. R. Civ. P.
23(c)(2)(B).  Plaintiff must provide notice to potential
opt-in class members that is "timely, accurate, and
informative."  See Hoffmann-La Rouche Inc. v. Sperling,
493 U.S. 165, 172 (1989).  Likewise, claims forms must be
informative and accurate.  Id. at 172; Churchhill
Village, L.L.C. v. General Electric, 361 F.3d 566, 575
(9th Cir. 2004) (notice is satisfactory if it "generally
describes the terms of the settlement in sufficient
detail to alter those with adverse viewpoints to
investigate and to come forward and be heard.").  The
proposed form and manner of class notice have been agreed
upon by all counsel and are adequate.

### 1.   Administration Procedures

The parties have agreed to retain Rust Consulting,
Inc. as the settlement administrator ("Settlement
Administrator") over the claim proceedings.  (Settlement
Stip. § 1.2; Mot. at 16.)  The Claims Administration
costs may not exceed $35,000.  (Id.)  The parties propose
that twenty-one (21) days after the entry of an order
granting this Motion, Defendant will provide the

27

Settlement Administrator a database containing the necessary information for producing claim forms and mailing class notice.  (Mot. at 16; Settlement Stip. § 9.1.)  No later than thirty-five (35) days after this Motion is granted, the Settlement Administrator will send by first class mail the class notice and claim forms with a pre-paid, self-addressed return envelope to the last known address of each Class Member or the updated address from the National Change of Address database.  (Id.)

### 2.   Claims Procedure

Class members shall have forty-five (45) days after the notice is mailed to consider the proposed Settlement and object to the Settlement or request not to participate in the Settlement.  (Settlement Stip. § 9.3.1.)  Defendant's employees during the period of August 1, 2008 through the date the Court approves the settlement shall be deemed to have submitted claim forms.  (Id.)  The date of mailing of the Claim Form is deemed to be the date the form is deposited in the U.S. Mail, postage prepaid, as evidenced by the post-mark.  (Id.)  Class Members who do not properly or timely submit the Claim Form shall not become a Participating Claimant, and shall not be entitled to any settlement payment.  (Id.)

Within five (5) business days after the expiration of

the Notice Period the Claims Administrator shall notify
class counsel of (i) the number of Class Members who have
opted out of the Class, and (ii) the number of Class
Members who have submitted Qualifying Claim Forms.
(Settlement Stip. § 9.3.4.)  Within ten (10) business
days after the expiration of the Notice period, the
Claims Administrator shall provide a list of
Participating Claimants to Defendant.  (Id.)  Within
thirty-five (35) days after the expiration of the Notice
Period, the Claims Administrator shall provide an update
listing of claims data and an update list of
Participating Claimants reflecting Class Members who
receive a re-mailed Notice.  (Id.)

    In the event that ten percent (10%) or more of all
Class Members timely request exclusion (opt-out) from the
Settlement Class by submitting a request for exclusion,
or the Court fails to approve a material term of this
Settlement, Defendant shall have the right to revoke and
terminate the agreement.  (Settlement Stip. § 9.3.5.)

    If a notice is returned by the U.S. Postal Service to
the Claims Administrator with a forwarding address for
the recipient, the Claims administrator shall re-mail the
notice to that address no later than the last day of the
Notice Period.  (Settlement Stip. § 9.3.4.)  If a notice
is returned by the U.S. Postal Service without a

forwarding address, the Claims Administrator shall perform a Social Security number search in an effort to determine the current address of the Class Member, and will resend the Notice no later than the last day of the Notice Period. (<u>Id.</u>)  If no updated address is determined, the Claims Administrator will resend the Notice to the Last Known Address no later than the last day of the Notice Period. (<u>Id.</u>)  For Class Members who are re-sent the Notice, the Notice Period shall be extend by twenty-five (25) days beyond the initial Notice Period. (<u>Id.</u>)  They will be sent a modified claim notifying them of the time in which they have to file a claim. (<u>Id.</u>)

### 3.   Notice of Settlement

The notice will inform Class members of: "(1) the nature of this action, the Settlement Class, Class Counsel, and the essential terms of the Settlement; (2) the allocation of the Settlement fund, including the method by which each Class Member's settlement share will be calculated, the requests for the Class Representative Payments and the Class Counsel Attorneys' Fees and Costs Payment, and the Settlement Administration costs that will be deducted from the Settlement fund; (3) how to participate in the Settlement; (4) how to comment on, opt-out of, or object to the Settlement; (5) this Court's procedures for final approval of the settlement; and (6)

1  how to obtain additional information regarding this

2  action and the Settlement."  (Mot. at 16.)

3

4      **4.   Scheduling Order**

5      The Court sets hearing date for final approval

6  hearing and related dates as set forth below.

7

| Event | Agreement | Date |
|-------|-----------|------|
| Deadline for Defendant to provide Class database | Within 21 days after Preliminary Approval | December 8, 2009 |
| Deadline to mail Class Notice to Class Members | Within 35 days after Preliminary Approval | December 22, 2009 |
| Deadline for submission of opt-out requests | Must be postmarked within 45 days after Class Notification | February 6, 2010 |
| Deadline for comments or objections | Must be postmarked within 45 days after Class Notification | February 6, 2010 |
| Deadline for submission of claim forms | Must be postmarked within 45 days after Class Notification | February 6, 2010 |
| Deadline to file Motion for Final Approval | 24 days prior to Final Approval Hearing | March 12, 2010 |
| Deadline to file reply brief responding to objections | 1 week prior to hearing | March 29, 2010 |
| Final Approval Hearing | | April 5, 2010 |

1

**IV. CONCLUSION**

2  For the foregoing reasons, the Court:

3  (1) conditionally certifies the proposed settlement

4  class;

5  (2) grants preliminary approval of the parties'

6  Settlement;

7  (3) directs dissemination of the class notice and

8  claim form to the class; and

9  (4) sets hearing date for final approval hearing and

10  related dates as set forth above.

11

12 Dated: <u>November 17, 2009</u>         

13        VIRGINIA A. PHILLIPS
        United States District Judge