1

2

3                                                          O

4

5

6                                              **JS-6**

7

8                    UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11   ROSALBA SANDOVAL,          )   Case No. EDCV 08-482-VAP
     individually, and on       )   (OPx)
12   behalf of all other        )
     similarly situated         )   **[Motion filed on March 12,**
13   current and former         )   **2010]**
     employees of Courtyard     )
14   Marriott and Tharaldson    )   **ORDER GRANTING MOTION FOR**
     Employee Management,       )   **FINAL APPROVAL OF CLASS**
15   Inc.,                      )   **ACTION SETTLEMENT**
                                )
16              Plaintiff,       )
                                )
17        v.                    )
                                )
18   ~~COURTYARD MARRIOTT, a~~   )
     ~~business entity unknown;~~ )
19   THARALDSON EMPLOYEE        )
     MANAGEMENT, INC., a        )
20   North Dakota              )
     corporation; and DOES 1   )
21   through 100, inclusive,    )
                                )
22              Defendant.       )
     _____ )
23

24        Plaintiff Rosalba Sandoval's motion for final

25   approval of class action settlement ("Motion for Final

26   Approval" or "Motion") came before the Court for hearing

27   on June 7, 2010.  After reviewing and considering all

28   papers filed in support of the Motion, as well as the

arguments advanced by counsel at the hearing, the Court GRANTS the Motion.

## I. BACKGROUND

### A. Procedural History

On October 30, 2007, in the California Superior Court for the County of San Bernardino, Plaintiff Rosalba Sandoval ("Plaintiff") filed a putative class action complaint ("Complaint") against Defendants Courtyard Marriott ("Marriott") and Tharaldson Employee Management, Inc. ("Tharaldson" or "Defendant") with the following claims: (1) failure to pay overtime compensation, in violation of California Labor Code § 1194; (2) unlawful collection or receipt of wages previously paid and failure to indemnify for expenditures in discharge of duties, in violation of California Labor Code §§ 221, 2802; (3) failure to provide required meal periods, in violation of California Labor Code § 226.7; (4) failure to provide required rest periods, in violation of California Labor Code § 226.7; (5) failure to provide accurate statements and maintain required records, in violation of California Labor Code §§ 226, 1174; and (6) unlawful business practices, in violation of Business and Professions Code §§ 17200, et seq.  On April 9, 2008, Tharaldson removed the case to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  (Doc. No. 1.)  On July 8, 2008, pursuant to Federal Rule of

Civil Procedure 41, Plaintiff dismissed Defendant
Courtyard Marriott from the action.  (Doc. No. 11.)

On March 4, 2009, Plaintiff filed a "Notice of
Settlement" as to all claims against Defendant
Tharaldson.  (Doc. No. 31.)  On July 28, 2009, Plaintiff
filed (1) the declaration of Matthew J. Matern ("Matern
Decl.") and (2) a motion ("Motion for Preliminary
Approval") for an order: (1) conditionally certifying
settlement class, (2) granting preliminary approval to
proposed class action settlement, and (3) directing
dissemination of class notice, which the Court granted
after allowing Plaintiff to submit supplemental briefing
in support of the motion.  (Doc. Nos. 32, 40.)  In a
November 17, 2010 order granting the Motion for
Preliminary Approval ("Preliminary Approval Order"), the
Court:

(1) conditionally certified a class ("Class")
consisting of "[a]ll persons who were employed in any
non-exempt position at any Courtyard by Marriott property
("Property") which was or is managed by Tharaldson in the
State of California between October 30, 2003, and the
Date of Preliminary Approval."
(2) granted preliminary approval of the parties'
settlement ("Settlement") set forth in the joint
stipulation of class action settlement ("Stipulation")

1   (Motion for Preliminary Approval of Class Action
2   Settlement, Ex. 4);
3       (3) directed dissemination of the class notice and
4   claim form to the class; and
5       (4) set a scheduling order and dates a final approval
6   hearing.  (See Doc. No. 40.)

7

8       The Court established February 6, 2010, as the
9   deadline for class members ("Class Members") to file
10  claims or objections, and ordered the parties to file a
11  motion for final approval of the settlement no later than
12  March 12, 2010.  (Preliminary Approval Order at 31.)

13

14      On March 12, 2010, Plaintiff filed the Motion for
15  Final Approval and the declaration of Caryn Donly ("Donly
16  Decl.").  (Doc. No. 42.)  On March 29, 2010, Tharaldson
17  filed a notice of non-opposition.  (Doc. No. 46.)  On
18  June 4, 2010, Plaintiff filed the supplemental
19  declaration of Caryn Donly ("Donly Supplemental Decl.").
20  (Doc. No. 48.)  At the June 7, 2010 hearing on the
21  Motion, the Court directed the parties to submit
22  supplement briefing by June 14, 2010 regarding the
23  average payment each Class Member will receive and the
24  final number of valid claim forms received.  (Doc. No.
25  49.)  On June 14, 2010, Defendant filed the declaration
26  of Sabrina Shadi ("Shadi Decl.").  (Doc. No. 50.)

27

28

**B.   Settlement Terms**

The proposed settlement calls for a total settlement amount ("Gross Settlement Amount") of $750,000.00 (Settlement Stip. § 1.19), from which the parties propose to deduct: (1) $225,000.00 (30% of the settlement) for attorneys' fees (Settlement Stip. § 7.1); (2) $13,934.68 for costs (Mot. for Final Approval at 9; Matern Decl. ¶ 6); (3) $12,500.00 for an incentive award for the class representative (Mot. for Final Approval at 6-7); and (4) $31,493.34 for claims administration (Donly Decl. ¶ 16; Settlement Stip. § 8.1).  After these deductions, the remaining settlement amount ("Net Settlement Amount") is $467,071.98.

The Settlement Agreement proposes to divide the Net Settlement Amount among all Class Members in proportion to the gross wages earned by the Class Member during the specified period. (Settlement Stip. § 6.2.1.)  The Class Members will receive a share of the Net Settlement Amount equal to his or her gross pay, divided by the aggregate gross pay for all Class Members, and then multiplied by the Net Settlement Amount.  (<u>Id.</u>)  Defendant will provide personnel and payroll records for determining Class Members' gross compensation during the class period. (Settlement Stip. § 9.3.3.)  These records are presumed determinative with respect to whether each employee is a Class Member and the Class Members' gross pay.  (<u>Id.</u>)

**B.    Settlement Procedure**

**1.    Notice to Class Members and Claims Received**

The parties retained Rust Consulting, Inc. ("Rust" or "Settlement Administrator") as the settlement administrator over the claim proceedings. (Settlement Stip. § 1.2; Mot. for Preliminary Approval at 16.)  Per the Settlement, the cost for settlement administration was not to exceed $35,000.00. (Id.)  The total cost of settlement administration, including fees and future costs for completion of the administration, is $31,493.34. (Donly Decl. ¶ 16.)

On December 16, 2009, Rust received from Defendant the class notice and claim forms, and a list ("Class List") of the Class Members' names, last known addresses, and Social Security numbers. (Donly Decl. ¶¶ 6-7; Mot. for Preliminary Approval at 16; Settlement Stip. § 9.1.) Rust processed the mailing addresses from the Class List and updated them as needed using the National Change of Address Database maintained by the U.S. Postal Service. (Donly Decl. ¶ 8.)

On December 28, 2009, Rust mailed class notices to 975 Class Members via First Class Mail. (Donly Decl. ¶ 9.)  The class notices advised Class Members that they could submit a claim form or exclusion form post-marked by February 11, 2010. (Id.)  Rust received 319

undeliverable class notices and performed address traces on 286; of those, Rust mailed class notices to 182 Class Members, with an updated filing deadline of March 8, 2010; of those, 53 were returned as undeliverable. (Donly Decl. ¶ 11.)  On April 5, 2010, Rust mailed class notices to 13 Class Members, bringing the total number of Class Members to 988.  (Donly Supplemental Decl. ¶ 11.) Accordingly, 190 of 988, or 19.23%, of the class notices were undeliverable.

Of 988 Class Members, Rust received 244 claim forms; of the 244 claim forms, four were deficient, three were untimely, and 237 were valid.  (<u>Id.</u>)  Thus, a total of 24.7% of Class Members submitted claim forms, and 24% submitted valid claim forms .  (<u>Id.</u>)  Rust received two exclusion forms, and no objections.  (Donly Decl. ¶¶ 13-14.)  The docket does not show that any Class Member filed an objection.

### 2.  Claims Procedure

Class Members had forty-five days after the class notice was mailed to consider the proposed Settlement and object to the Settlement or request not to participate in the Settlement.  (Settlement Stip. § 9.3.1.)  Defendant's employees who fall within the Class definition and were employed at any time during the period of August 1, 2008 through November 17, 2009, "shall be deemed to have

submitted claim forms." (Id.)  The date of mailing of
the claim form was the date the form was deposited in the
U.S. Mail, postage prepaid, as evidenced by the post-
mark.  (Id.)  Class Members who did not properly or
timely submit the claim form did not become participating
claimants, and are not entitled to a settlement payment.
(Id.)

     Within five business days after the expiration of the
notice period the Settlement Administrator shall notify
class counsel of (i) the number of Class Members who have
opted out of the Class, and (ii) the number of Class
Members who have submitted qualifying claim forms.
(Settlement Stip. § 9.3.4.)  Within ten business days
after the expiration of the notice period, the Settlement
Administrator shall provide a list of participating
claimants to Defendant.  (Id.)  Within thirty-five days
after the expiration of the notice period, the Settlement
Administrator shall provide an updated listing of claims
data and an update list of participating claimants
reflecting Class Members who receive re-mailed notices.
(Id.)

     The Settlement provided that in the event that 10% or
more of all Class Members timely requested exclusion
(opt-out) from the Settlement Class by submitting a
request for exclusion, Defendant shall have the right to

revoke and terminate the agreement. (Settlement Stip. §
9.3.5.) Here, only two of 988 Class Members, or .002%,
submitted valid exclusion forms. Thus, Defendant has no
right to revoke the agreement on this basis.

### 3. Notice of Settlement

The notice informed Class Members regarding:

> (1) the nature of this action, the Settlement
> Class, Class Counsel, and the essential terms of
> the Settlement; (2) the allocation of the
> Settlement fund, including the method by which
> each Class Member's settlement share will be
> calculated, the requests for the Class
> Representative Payments and the Class Counsel
> Attorneys' Fees and Costs Payment, and the
> Settlement Administration costs that will be
> deducted from the Settlement fund; (3) how to
> participate in the Settlement; (4) how to comment
> on, opt-out of, or object to the Settlement; (5)
> this Court's procedures for final approval of the
> settlement; and (6) how to obtain additional
> information regarding this action and the
> Settlement.

(Mot. for Preliminary Approval at 16.)

## II. LEGAL STANDARD

To certify a class under Federal Rule of Civil
Procedure 23(a) ("Rule 23"), a plaintiff must
demonstrate: (1) the class is so numerous that joinder of
all members is impracticable ("numerosity"), (2) there
are questions of law or fact common to the class
("commonality"), (3) claims or defenses of the
representative parties are typical of the claims or
defenses of the class ("typicality"), and (4) the
representative parties will fairly and adequately protect

9

the interests of the class ("adequacy of representation").  Fed. R. Civ. P. 23(a).

In addition to these prerequisites, a plaintiff must satisfy one or more of the following prongs of Rule 23(b)(3) to maintain a class action:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The matters pertinent to the findings include: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum.[1]  Fed. R. Civ. P. 23(b)(3).

Where "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the

---

[1] A fourth factor, "the difficulties likely to be encountered in the management of a class action," need not be considered when class certification is only for settlement purposes.  Fed. R. Civ. P. 23(b)(3)(D); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).

certification and the fairness of the settlement."

<u>Staton v. Boeing Co.</u>, 327 F.3d 938, 952 (9th Cir. 2003).

### III.   DISCUSSION

**A.   Class Certification**

Parties seeking class certification for settlement purposes must satisfy the requirements of Rule 23. <u>Amchem</u>, 521 U.S. at 620.  "When . . . the parties have entered into a settlement agreement before the district court certifies the class, reviewing courts must pay undiluted, even heightened, attention to class certification requirements."  <u>Staton</u>, 327 F.3d at 952.

Based on the showing made by the parties in support of the Motion for Preliminary Approval and the Motion for Final Approval and as discussed more fully in the Preliminary Approval Order, the Court finds the parties have met their burden as to the prerequisites for class certification set forth in Rule 23(a) and (b)(3).

Specifically, the Class consists of 975 members, and is therefore so numerous that joinder is impracticable. As to commonality, the complaint alleges all Class Members were denied meal and rest breaks and identifies nine "common questions" shared by the Class. Accordingly, there are questions of law and fact common to the Class which predominate over questions affecting

individual Class Members.  As to the typicality, the
named Plaintiff alleges Defendant denied her meal and
rest breaks, so her claim is typical of the Class.

     As to adequacy of representation, Plaintiff's counsel
is experienced and capable of fairly and competently
representing the interests of the Class.  (See Matern
Decl. at 1-4.)  Furthermore, the named Plaintiff and
Plaintiff's counsel have fairly represented and protected
the interests of the Class.  As to the Rule 23(b)(3)
factors, a class action is superior to other available
methods for the fair and efficient adjudication of this
case, considering the low interest of Class Members in
individually controlling the prosecution of the separate
actions and the desirability of concentrating the
litigation of these claims in this particular forum.
Accordingly, the court finds the parties have met their
burden on the elements of class certification.

**B.   Fairness, Reasonableness, and Adequacy of the
       Settlement**

     Before approving a class action settlement, the court
must determine whether "the settlement . . . is fair,
reasonable, and adequate."  Fed. R. Civ. P. 23(e)(1)(C).
To make a final fairness determination, the court must
closely examine the proposed settlement, taking into

1  consideration objections and any further developments.

2

3      In determining whether a settlement is fair,

4  reasonable, and adequate, a court balances several

5  factors, including:

6          the strength of plaintiffs' case; the risk,
           expense, complexity, and likely duration of
7          further litigation; the risk of maintaining class
           action status throughout the trial; the amount
8          offered in settlement; the extent of discovery
           completed, and the stage of the proceedings; the
9          experience and views of counsel; the presence of
           a governmental participant; and the reaction of
10         the class members to the proposed settlement.

11 Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1291

12 (9th Cir. 1992) (citing Officers for Justice v. Civil

13 Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982)); In re

14 Heritage Bond Litig., 546 F.3d 667, 674 (9th Cir. 2008).

15 This is "by no means an exhaustive list of relevant

16 considerations," though, and "[t]he relative degree of

17 importance to be attached to any particular factor will

18 depend on the unique circumstances of each case."

19 Officers for Justice, 688 F.2d at 625.

20

21      In evaluating a proposed settlement, "[i]t is the

22 settlement taken as a whole, rather than the individual

23 component parts, that must be examined for overall

24 fairness."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026

25 (9th Cir. 1998).  The Court "does not have the ability to

26 delete, modify, or substitute certain provisions," and

27 "[t]he settlement must stand or fall in its entirety."

28

*Id.*   The question is not whether the settlement "could be prettier, smarter, or snazzier," but solely "whether it is fair, adequate, and free from collusion."   *Id.*, 150 F.3d at 1027.

### 1.   Arms-Length Negotiations

The parties engaged in negotiations, including a 12-hour mediation session presided over by an experienced mediator, Christine Masters, after which the parties reached an agreement.   (Mot. for Preliminary Approval at 4-5; Matern Decl. ¶¶ 22-23; Matern Supplemental Decl. ¶ 4.)   "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."   Satchell v. Fed. Express Corp., Nos. C03-2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); see also Alexander Mfg., Inc. v. Illinois Union Ins. Co., 666 F. Supp. 2d 1185, 1201-02 (D. Or. 2009).   The Court is satisfied the Settlement Agreement is the product of arms-length negotiation and not collusive.   (*Id.*)

### 2.   Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiff states the primary strength of the case is the time record sampling showing a violation rate of 56.52% for the Class Members.   (Matern Decl. ¶ 10.)

14

Plaintiff argues that the Settlement Agreement provides Class Members with "the benefit of removing the risks, delay and uncertainties of litigation." (Matern Decl. ¶ 26.)

Plaintiff, although confident in her position, notes several risks and weaknesses in her case. Plaintiff contends that Defendant has contested liability and class certification vigorously in this case. (Matern Supplemental Decl. ¶ 4; Settlement Stip. ¶¶ 3.3-3.4.) Moreover, Plaintiff argues that proof of rest period and meal break violations is particularly difficult because it requires production of significant facts. (Matern Supplemental Decl. ¶¶ 25-26.) Plaintiff also points to risks inherent in litigation, acknowledging the challenges of obtaining class certification and of proving liability and damages, as well as the possibility that Defendant will raise meritorious defenses to Plaintiff's claims. (Stipulation ¶ 3.4.) Settling the case, Plaintiff reasons, would "avoid many more documents being requested, reviewed and analyzed with more expense in having [Plaintiff's] expert analyze the documents[,] . . . obtain[ing] the contact information of the absent class members, contact[ing] them and obtain[ing] numerous declarations[,] . . . [and] send[ing] out questionnaires to absent members at great expense." (Matern

Supplemental Decl. ¶ 11.)  For the foregoing reasons, the
Court finds this factor supports final approval.

**3.   The Extent of Discovery Completed, and the
        Stage of the Proceedings**

In analyzing this factor, the Court evaluates
whether "the parties have sufficient information to make
an informed decision about settlement." <u>Linney v.
Cellular Alaska P'ship</u>, 151 F.3d 1234, 1239 (9th Cir.
1998).  Here, Plaintiff's counsel conducted sufficient
discovery to permit an informed settlement by: (1)
deposing Plaintiff; (2) deposing Todd Troyer, Defendant's
then Director of Human Resources; (3) reviewing documents
produced by Defendant; (4) reviewing and analyzing
Defendant's representative sample timekeeping and payroll
data; and (5) consulting with experts regarding
Defendant's data.  (<u>See</u> Matern Decl. ¶¶ 16-21.)
Accordingly, the Court finds that the parties possessed
sufficient information to make an informed decision about
the Settlement.

When the parties entered into the Settlement, no
trial date had been set and the action was in an early
phase of the litigation.  In other words, this is not a
case where dozens of depositions have been taken and
thousands of pages of documents reviewed before the
parties reached a settlement.  The parties have not

litigated the issue of class certification, nor have they filed any motions with the Court, save the Motion for Preliminary Approval and this Motion.  Thus, Plaintiff has demonstrated that the parties have spent sufficient time on the action to allow an informed decision about settlement, but not so much time as to deplete the common fund.  Accordingly, this factor supports final approval of the Settlement.

### 4.  Reaction of Class Members to the Proposed Settlement

Rust received 237 valid claim forms.  (Donly Decl. ¶ 12.)  Thus, 24% of Class Members submitted valid claim forms.  Rust received two exclusion forms, and no objections.  (Donly Decl. ¶¶ 13-14.)  The docket does not show that any Class Member filed an objection.  Accordingly, of the Class Members who elected to respond to the class notice, 99.2% chose to participate in the settlement and only .002% opted out.  (Mot. for Final Approval at 6.)  Thus, the reaction of Class Members generally has been positive.

### 5.  Amount Offered in Settlement

The amount offered in settlement is $750,000.00.  (Mot. for Preliminary Approval at 1, 5-8; Stipulation § 1.19.)  Class Members will receive a share of the Net

1   Settlement Amount (Gross Settlement Amount minus

2   attorneys' fees and costs, administration fees, and an

3   incentive award for the class representative fee) equal

4   to his or her gross pay, divided by the aggregate gross

5   pay for all Class Members, and then multiplied by the Net

6   Settlement Amount.  (Settlement Stip. § 6.2.1.)  The

7   average amount each Class Member will receive is

8   approximately $749.60.  (Shadi Decl. ¶ 5.)  In exchange

9   for the settlement, Plaintiff and the putative class

10  agree to release claims against Defendant, though the

11  scope of their releases differs.  (Stipulation §§ 1.27,

12  1.28.)

13

14      The amount offered in settlement supports final

15  approval.  Considering the present value of the

16  settlement amount, the probability of lengthy litigation

17  in the absence of a settlement, the risk that Plaintiff

18  and the Class Members would not have been able to succeed

19  at trial, and the risk that a jury could award damages

20  less than $750,000.00, the settlement amount is

21  reasonable.  Accordingly, the Court finds this factor

22  favors final approval.

23

24      **6.   Experience and Views of Counsel**

25      Plaintiff submits a detailed declaration by

26  Plaintiff's counsel demonstrating his extensive

27  experience litigating wage and hour class actions.  (See

28

Matern Decl. ¶¶ 4-15, 32.)  In the declaration,
Plaintiff's cousnel states that, in his opinion, the
Settlement is reasonable and fair.  (Id. at ¶ 32.)  The
Court concludes counsel is competent, experienced, and
not subject to influence by the opposing party.

### 7.   Attorneys' Fees and Incentive Payment for Named Plaintiff

The Motion and Stipulation indicate Plaintiff will
seek allocation of settlement funds for attorneys' fees
and for an incentive payment.  For a settlement to be
fair and adequate, "a district court must carefully
assess the reasonableness of a fee amount spelled out in
a class action settlement agreement."  Staton, 327 F.3d
at 963.

#### a)   Attorneys' Fees

The Court next determines whether the attorneys' fees
requested by Plaintiff's counsel are fair and reasonable.
Fischer v. SJB-PD., Inc., 214 F.3d 1115, 1115 (9th Cir.
2000).  Plaintiff's counsel seeks an award of attorneys'
fees of 30% of the $750,000.00 settlement fund, or
$225,000.00, plus costs in the amount of $13,934.68.
(Mot. for Final Approval at 9.)

Each claim Plaintiff asserts arises under California
law.  Thus, California law governs the award of

attorneys' fees.  See Vizcaino v. Microsoft Corp., 290
F.3d 1043, 1047 (9th Cir. 2002).  California recognizes
the common fund doctrine for the award of attorneys' fees
to prevailing plaintiffs whose efforts result in creation
of a fund benefitting others.  Serrano v. Priest, 20 Cal.
3d 25, 35 (1977).  Under both California and Ninth
Circuit precedent, a court may exercise discretion to
award attorneys' fees from a common fund by applying
either the lodestar method[2] or the percentage-of-the-fund
method.[3]  Wershba v. Apple Computer, Inc., 91 Cal. App.
4th 224, 253 (2001); Fischel v. Equitable Life Assurance
Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002) (citing
Vizcaino, 290 F.3d at 1047).  "Irrespective of the chosen
method, 'the district court should be guided by the
fundamental principle that fee awards out of common funds
be 'reasonable under the circumstances.'"  Alberto v.
GMRI, Inc., 252 F.R.D. 652, 667 (E.D. Cal. 2008) (citing
In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d
1291, 1295 (9th Cir. 1990)).

     Plaintiff asks the Court to employ the latter
procedure, whereby Plaintiff's counsel would receive 30%

---

[2] Under the lodestar method, the court calculates the
fee award by multiplying the number of hours reasonably
spent by a reasonable hour rate and then adjusting that
figure, if necessary, to account for the risks associated
with representation.  Paul, John, Alston & Hunt v.
Graulty, 886 F.2d 268, 272 (9th Cir. 1989).

[3] Under the percentage-of-the-fund method, the court
calculates the fee award by designating a percentage of
the total common fund.  Six Mexican Workers v. Ariz.
Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

of the settlement fund.  (<u>See</u> Mot. for Final Approval at
7-11; Stipulation § 7.1.)  Plaintiff argues this amount
is reasonable because it is "consistent with the Ninth
Circuit's standard."  (Mot. for Final Approval at 8.)

     In its Preliminary Approval Order, the Court,
disagreed with Plaintiff's assertion that 30% is
reasonable and noted that the Ninth Circuit's benchmark
is 25%, not 30%.  <u>See</u> <u>Hanlon</u>, 150 F.3d at 1029 ("This
circuit has established 25% of the common fund as a
benchmark award for attorney fees."); <u>Graulty</u>, 866 F.2d
at 272 (the 25% benchmark can be adjusted upward or
downward "to account for any unusual circumstances[,]"
but the justification for adjustment must be clear).

     In the Motion, Plaintiff's counsel argues unusual
circumstances justifying a higher percentage are present
because the lodestar amount exceeds the 25% benchmark.
(Mot. for Final Approval at 7.)  Aside from making this
argument, however, Plaintiff has not presented evidence
of unusual circumstances that justify a departure from
the Ninth Circuit's benchmark.


     The attorneys' fees request, therefore, is
unreasonable.  The Court determines a reasonable

1  attorney's fees award in this case is the Ninth Circuit's

2  benchmark of 25%, or $187,500.00.

3

4            **b)   Incentive Payment for Plaintiff**

5        Plaintiff seeks $12,500.00 as an incentive award, in

6  addition to any recovery to which she may be entitled

7  under the Settlement.  (See Mot. for Preliminary Approval

8  at 7-8; Stipulation § 6.3.)  The criteria courts may

9  consider in determining whether to make an incentive

10  award include:

11       1)  the  risk  to  the  class  representative  in
         commencing suit, both financial and otherwise; 2)
12       the    notoriety    and    personal    difficulties
         encountered by the class representative; 3) the
13       amount  of  time  and  effort  spent  by  the  class
         representative; 4) the duration of the litigation
14       and;  5)  the  personal  benefit  (or  lack  thereof)
         enjoyed by the class representative as a result of
15       the litigation.

16  Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294,

17  299 (N.D. Cal. 1995).

18

19       Plaintiff bases her proposed incentive award on the

20  following: (1) the amount of time and effort she expended

21  during the course of the litigation, including being

22  deposed, reviewing documents, and having regular

23  discussions with counsel; (2) the risks she incurred

24  during the course of litigation (e.g., being liable for

25  opposing parties' fees and costs); (3) the full general

26  release of her claims, which is "much broader" than the

27  Class Members' "Released Claims" in the Settlement; (4)

28

the risk of stigma she assumed for being a class
representative in a class action labor dispute, which
could, in turn, affect her future employability; and (5)
the value of the individual claim she is settling, which
her counsel values at more than $12,500.00.  (See Mot.
for Preliminary Approval at 7-8; Settlement Stip. § 3.5;
Matern Supplemental Decl. ¶ 13.)  In addition,
Plaintiff's cousel argues that "the Class Representative
was instrumental in establishing the wage and hour
violations alleged in this action, and the recovery
provided for in the Settlement Agreement would have been
impossible to obtain without her willingness to act as
class representative."  (Mot. for Final Approval at 6.)

Plaintiff submits declarations detailing the amount
of time she has spent on this action, including: (1) 16
hours attending mediation (12 hours at the mediation and
4 hours traveling to the mediation); (2) 15.5 hours
participating in her deposition (5 hours preparing for
the deposition, 6.5 hours at the deposition, and 4 hours
traveling to the deposition); (3) 2 hours meeting with
Plaintiff's counsel's investigators; and (4) regularly
communicating with counsel.  (Sandoval Decl. ¶¶ 3-4, 12;
Matern Decl. ¶¶ 5-6.)  Plaintiff alleges she spent a
total of 33.5 hours.  (Id.)

1    Plaintiff also alleges she bore individual risks in

2 her capacity as class representative, including: (1)

3 subjecting herself to liability for Defendant's costs and

4 attorneys' fees (Matern Decl. ¶ 4), and (2) "by filing

5 this lawsuit against [Defendant] . . . [Plaintiff] may

6 need to disclose this fact to potential future employers

7 and it will be a public record[, which] may adversely

8 effect (sic) [Plaintiff's] ability to be hired."

9 (Sandoval Decl. ¶ 11.)

10

11    An award of $12,500.00 is unreasonable, considering

12 the limited time Plaintiff expended and the average

13 payment the Class Members will receive.  (See Shadi Decl.

14 ¶ 5.)  The Court determines that an incentive award of

15 $7,500.00 is reasonable.  See, e.g., In re Mego Fin.

16 Corp. Sec. Litig., 213 F.3d 454, 463 (9th Cir. 2000)

17 (approving incentive award of $5,000.00 to two plaintiff

18 representatives of 5,400 potential class members in $1.75

19 million settlement, but constituting only 0.56% of the

20 settlement); In re SmithKline Beckman Corp., 751 F. Supp.

21 525, 535 (E.D. Pa. 1990) (approving incentive payments of

22 $5,000.00 for one named representative of each of nine

23 plaintiff classes involving more than 22,000 claimants

24 and a settlement of $22 million, constituting 0.18% of

25 the settlement amount); Alberto, 252 F.R.D. at 667-70

26 (requiring parties to present evidence showing the named

27 plaintiff's substantial efforts taken as class

28

24

1  representative to justify the discrepancy between her
2  $5,000.00 award, constituting 0.71% of the settlement,
3  and the $24.17 that each class member was expected to
4  receive).

5

6      Here, the average payment each Class Member will
7  receive is approximately $749.60.  (Shadi Decl. ¶ 5.)
8  However, an award of $7,500.00 constitutes 1% of the
9  gross settlement.  This payment represents a higher
10 percentage than the cited cases, and Plaintiff has not
11 argued persuasively that an even higher incentive award
12 is justified.  Thus, a payment of $12,500.00 is excessive
13 under the circumstances of this case, and the Court
14 determines an incentive award of $7,500.00 is fair and
15 reasonable.

16

17     **8.   Scope of Claims Released**
18     The factors above favor approval of the settlement.
19 The Stipulation proposes to release Defendant from:
20          any and all known and unknown claims, causes of
            action, debts, liabilities, demands, obligations,
21          guarantees or damages, in law or equity, tort or
            in contract, by statute, pursuant to case law or
22          otherwise which have been or could have been
            alleged in the Lawsuit or in any other state or
23          federal court, administrative tribunal, or in
            arbitration or similar proceedings, based upon,
24          arising from, or related to the claims or causes
            of action asserted in the Lawsuit including but
25          not limited to violations of California Labor Code
            Sections 203, 204.3, 221, 226.7, 512, 1174, 1198,
26          and  2802  and  applicable  Industrial  Welfare
            Commission Wage Orders, based upon Tharaldson's
27          alleged: Nonpayment of compensation for meal and
            rest  period  violations;  nonpayment  of  wages,
28

including claims for overtime wages and "off-the-clock" work; failure to indemnify employees for expenditures incurred in the discharge of their duties; failure to pay all wages due at termination; inaccurate wage statements; unfair or unlawful business practices (including under Business & Professions Code Sections 17200 et seq.); and any related premiums, penalties, interest, punitive damages, costs, attorneys' fees, injunctive relief, declaratory relief, or accounting.

(Settlement Stip. § 127.)

The Settlement compensates Class Members for Defendants' alleged failure "to provide lawful duty[-] free rest periods and meal periods, or pay compensation in lieu thereof; [ ] to indemnify employees for expenses incurred in the discharge of their duties; failing to pay wages (including overtime and for off-the-clock work); [ ] to pay all wages due at termination; and [ ] to comply with itemized employee wage statement provisions. [Plaintiff] further alleges that [Defendant's] conduct violated California's Unfair Competition Law set forth in California Business & Professions Code Section 17200, <u>et seq.</u>"  (Proposed Settlement at 2.)

The scope of the Settlement, therefore, is fair and reasonable because it includes only those claims "based upon, arising from, or related to the claims or causes of action asserted in the Lawsuit."  In other words, it does not prevent Class Members from pursuing claims unrelated to the Settlement.

26

Based on the balance of the foregoing factors, the Court finds Plaintiff has met her burden of demonstrating the fairness, reasonableness, and adequacy of the Settlement Agreement.

## C.   Adequacy of Notice Procedure

Rule 23 requires the court to direct to Class Members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  The notice must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment.  Fed. R. Civ. P. 23(c)(2)(B).  Plaintiff must provide notice to potential opt-in class members that is "timely, accurate, and informative."  See Hoffmann-La Rouche Inc. v. Sperling, 493 U.S. 165, 172 (1989).  Likewise, claim forms must be informative and accurate.  Id. at 172; Churchhill Village, L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (notice is satisfactory if it "generally describes the terms of the settlement in

1    sufficient detail to alert those with adverse viewpoints
2    to investigate and to come forward and be heard.").

3

4        On November 17, 2009, the Court approved the proposed
5    notices and claim forms for the Class.  In the
6    Preliminary Approval Order, the Court determined that the
7    proposed form and manner of class notice was adequate,
8    and now evaluates whether the parties executed class
9    notice in accordance with the Court's Preliminary
10   Approval Order.

11

12       The parties retained Rust as the Settlement
13   Administrator over the claim proceedings.  (Settlement
14   Stip. § 1.2; Mot. for Preliminary Approval at 16.)  Per
15   the Settlement, the cost of settlement administration was
16   not exceed to $35,000.00 (id.), and the actual cost of
17   settlement administration, including fees and future
18   costs for completion of the administration, is
19   $31,493.34.  (Donly Decl. ¶ 16.)

20

21       On December 16, 2009, the Settlement Administrator
22   received from Defendant the class notice and claim forms,
23   and the Class List of Class Members' names, last known
24   addresses, and Social Security numbers.  (Donly Decl. ¶¶
25   6-7; Mot. for Preliminary Approval at 16; Settlement
26   Stip. § 9.1.)  Rust processed the mailing addresses from
27   the Class List and updated them as needed using the U.S.
28

Postal Service's National Change of Address Database. (Donly Decl. ¶ 8.)

On December 28, 2009, the Settlement Administrator mailed class notices to 975 Class Members via First Class Mail. (Donly Decl. ¶ 9.) The class notices advised Class Members that they could submit a claim form or exclusion form post-marked by February 11, 2010. (<u>Id.</u>) The Settlement Administrator received 319 undeliverable class notices and performed address traces on 286 of these; of those, Rust mailed class notices, with an updated filing deadline of March 8, 2010 to 182 Class Members; of those, 53 were returned as undeliverable. (Donly Decl. ¶ 11.) On April 5, 2010, Rust mailed class notices to 13 Class Members who were added to the Class List after the original claims filing deadline, bringing the total number of Class Members to 988. (Donly Supplemental Decl. ¶ 11.) Of the 13 notices, Rust received four claim forms. Accordingly, 190 of 988, or 19.23%, of the class notices were undeliverable.

The Settlement Administrator received 244 claim forms, 237 of which were deemed valid (three remain deficient). (Donly Decl. ¶ 12.) Thus, 24% of Class Members submitted valid claim forms. (<u>Id.</u>) The Settlement Administrator received two exclusion forms, and no objections. (Donly Decl. ¶¶ 13-14.) Thus, of the

Class Members who elected to respond to the notice, 99.2%
chose to participate in the settlement.  (Mot. for Final
Approval at 6.)  Class Members who did not properly or
timely submit a claim form did not become participating
claimants, and are not entitled to a settlement payment.
(Id.)  As noted above, the docket does not show that any
Class Member filed an objection.

Under the Settlement, Defendant had a right to revoke
and terminate the agreement if 10% or more of all Class
Members timely requested exclusion (opt-out) from the
Class by submitting a request for exclusion.  (Settlement
Stip. § 9.3.5.)  Here, only two of 988 Class Members, or
.002%, submitted valid exclusion forms.  Thus, Defendant
does not have a right to revoke the agreement on this
basis.

Plaintiff's counsel complied with the notice
requirements of the Preliminary Approval Order.  The
ultimate notice sent to Class Members pursuant to the
Preliminary Approval Order was the best notice
practicable under the circumstances and provided
individual notice to all Class Members who could be
located through reasonable effort.

1

**IV. CONCLUSION**

2      Based on the consideration of the foregoing factors,

3   the Settlement is fundamentally fair, reasonable, and

4   adequate.  Accordingly, the Court:

5      (1) GRANTS the Motion for Final Approval, with

6      modifications set forth below as to the attorneys'

7      fees and incentive award;

8      (2) DISMISSES the action WITH PREJUDICE.  All Class

9      Members, except those who properly opted out, shall

10     be bound by this Order;

11     (3) MODIFIES the attorneys' fees award to Plaintiff's

12     counsel to $187,500.00, plus $13,934.68 in costs, and

13     the incentive award for the named Plaintiff to

14     $7,500.00.

15

16     After deducting all fees, costs and awards, the Net

17  Settlement Amount to be distributed to Class Members is

18  $509,571.98.

19

20

21

22

23  Dated:  __June 15, 2010__        _____

24                                   VIRGINIA A. PHILLIPS
                                     United States District Judge

25

26

27

28